# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

STEVEN O'BRIEN,

        Plaintiff,

vs.

R.C. WILLEY HOME FURNISHINGS,

        Defendant.

2:15-cv-00329-RCJ-CWH

**ORDER**

This case arises out of an employer's decision to terminate an employee following a failed alcohol test. Pending before the Court are a Motion for Summary Judgment (ECF No. 23) and a Motion for Partial Summary Judgment (ECF No. 25).

**I.    FACTS AND PROCEDURAL HISTORY**

In 2006, Plaintiff Steven O'Brien began working for Defendant R.C. Willey Home Furnishings ("R.C. Willey") as a delivery driver. (Compl. ¶ 6, ECF No. 1). On August 15, 2013, Plaintiff suffered an injury to his lumbar spine while at work, which required surgery. (*Id.* ¶ 7). Following the accident, Defendant placed Plaintiff in a light duty position in which he primarily answered and responded to telephone calls from customers. (*Id.* ¶¶ 7–8). Although Plaintiff no longer worked full duty driving delivery trucks, (*id.*), on at least one occasion he drove "a box truck . . . for which no CDL is required." (Decl. Pl., ¶ 15, ECF No. 29-1, at 6).

On September 25, 2013, Defendant required Plaintiff to take two breathalyzer tests before beginning work. (Compl. ¶ 8). On both August 2, 2013 and September 4, 2013, a third-party administrator had randomly chosen Plaintiff to take an alcohol test on a forthcoming date. (Aff. Shane Johnson, ¶¶ 3–9, ECF No. 24-1, at 15–16). The tests taken on September 25 showed

1

Plaintiff's blood alcohol content ("BAC") was .067 percent at 7:40 a.m. and .058 percent at 7:58 a.m. (Compl. ¶ 8). Plaintiff acknowledges that he was drinking beer heavily the night before, but he did not have anything to drink that morning. (*Id.*). He did not appear to be intoxicated or impaired. (Decl. Heather Tascher, ¶ 5, ECF No. 29-5, at 3; Dep. Anthony Everett, 25:1-12, ECF No. 29-6, at 9). Although Plaintiff was under no official driving restrictions, (Aff. Julie Sandoval, ¶ 6, ECF No. 24-1, at 73; Aff. Tony Everett, ¶ 8, ECF No. 24-1, at 24), he was not scheduled to operate a commercial vehicle that day. (Compl. ¶ 8). After the tests, Defendant suspended Plaintiff and sent him home. (*Id.*). On October 2, 2013, Defendant terminated Plaintiff's employment because of the results of the alcohol tests. (*Id.* ¶ 9; Decision & Order, N.V. Dep't of Admin., ¶¶ 2–3, ECF No. 25, at 17).

From April 2009 to January 2011, Plaintiff reported to Defendant three other injuries that occurred while he was working. (Reports, 2, 4–5, ECF No. 29-7). Plaintiff filed a workers' compensation claim for his most recent injury, (*id.* at 9), and he has filed other claims for prior injuries. (Compl. ¶ 13). Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a Notice of Suit Rights on November 4, 2014. (*Id.* ¶ 17).

Plaintiff made the following claims in state court: (1) termination of employment in violation of Nev. Rev. Stat. 613.333; (2) per se defamation; (3) retaliatory discharge in violation of public policy; and (4) discrimination under the Americans with Disabilities Act ("ADA"). Defendant removed. Defendant filed a motion for summary judgment asking the Court to dismiss all four claims. Plaintiff filed a motion for partial summary judgment asking the Court to rule in his favor as to the claim of violation of Nev. Rev. Stat. 613.333.

///

## II. SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the

opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## III.  ANALYSIS

### A.  Violation of Nev. Rev. Stat. 613.333

The parties have filed cross motions for summary judgment as to this claim.

///

///

### 1. Issue Preclusion

Before the Court addresses the merits of the claim, it must address Plaintiff's argument that the Court must give preclusive effect to the findings of fact in a prior hearing before the Nevada Department of Administration. "The doctrine of issue preclusion prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (quoting *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979)). Under Nevada law, administrative proceedings may have preclusive effect if all the elements of res judicata are met. *Britton v. City of N. Las Vegas*, 799 P.2d 568, 569 (Nev. 1990). "[I]ssue preclusion requires that (1) an issue be identical, (2) the initial ruling was final and on the merits, (3) 'the party against whom the judgment is asserted' was a party or in privity with a party in the prior case, and (4) 'the issue was actually and necessarily litigated.'" *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009) (quoting *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008)).

The only element the parties dispute is whether the issues in the administrative proceeding are identical to the issues in this case. The Court finds that the following factual and legal issues and findings from the administrative proceeding are identical, and pertinent, to the factual and legal issues in this case:

- On August 15, 2013, Plaintiff "suffered an injury by accident arising out of and in the course of his employment," (Decision & Order, ¶ 1, N.V. Dep't of Admin., ECF No. 25, at 17);

- Plaintiff "was placed on modified duty and has not worked full duty driving delivery trucks since the date of injury," (*id.*);

- Plaintiff "was given a light duty position performing primarily customer service functions answering telephones and helping customers who called in. This was the job that [Plaintiff] was to perform when he came to work at 7:30 a.m. on September 25, 2013. He was not scheduled to drive that day," (*id.* ¶ 2, at 18);

- On September 25, 2013, Plaintiff was given two breathalyzer tests before performing any work. The first test showed that at 7:40 a.m. he had a BAC of .067 percent. The second test at 7:58 a.m. showed his BAC to be .058 percent, (*id.*);

- Plaintiff's BAC was below Nevada's legal definition of intoxication which is .08 percent, (*id.*);

- "On October 2, 2013, [Plaintiff's] employment was terminated due to the results of the September 25, 2013 Breathalyzer tests," (*id.* ¶ 3, at 19);

- Plaintiff "had been drinking beer on his off hours the night before. He knew that he was not expected to drive a commercial vehicle at work that day," (*id.* ¶ 5);

- Plaintiff "had not had anything to drink that morning. He had not had anything to drink after arriving to work," (*id.* ¶ 2, at 18);

- The appeal "involves termination of employment for the use of a legal product, alcohol, by a man of legal drinking age," (*id.* ¶ 9, at 20);

- "Even though [Plaintiff] was working in a customer service position, [he] still held a Commercial Drivers License (CDL) and was subject to any proper US DOT random alcohol tests . . . The federal law requires a commercial truck driver to have less than .04% BAC during any period in which he/she is actually performing, ready to perform, or immediately available to perform any 'safety function,'" (*id.* ¶ 10);

- "Answering telephones in a customer service role as [Plaintiff] was scheduled to perform on September 25, 2013 is not a safety function under federal laws applicable to commercial truck drivers," (*id.*);

- "The Insurer/Employer has failed to meet its burden to show that [Plaintiff's] termination by the Employer on October 2, 2013 was for reasons of 'gross misconduct' and, therefore, TTD benefits may not be denied under NRS 616C.232(4)," (*id.* ¶ 1, at 21).

The Court must give preclusive effect to those factual and legal issues. However, this determination does not resolve all issues relevant to the claim, as described below in the Court's analysis of the merits.

Defendant cites *Britton* to argue that issue preclusion does not apply to discrimination claims. But the *Britton* court did not determine whether a discrimination exception exists in Nevada, it chose not to address the issue because "no allegations of employment discrimination

6

were made in the present case." *Britton*, 799 P.2d at 569. Defendant has not provided any authority applicable to this case that establishes the existence of a discrimination exception.

### 2. Merits of the Claim

Under Nevada law, an employer may not:

> Discharge or otherwise discriminate against any employee concerning the employee's compensation, terms, conditions or privileges of employment,
>
> because the employee engages in the lawful use in this state of any product outside the premises of the employer during the employee's nonworking hours, if that use does not adversely affect the employee's ability to perform his or her job or the safety of other employees.

Nev. Rev. Stat. § 613.333(1)(b).

It is undisputed that Defendant discharged Plaintiff because he "engage[d] in the lawful use . . . of [a] product outside the premises of the employer during the employee's nonworking hours." *Id.* Plaintiff lawfully consumed beer before he arrived at work and not while at work. (Decision & Order, ¶ 2, at 18; ¶ 5, at 19). Defendant terminated Plaintiff due to the results of the breathalyzer tests. (*Id.* ¶ 3, at 19). Thus, the only remaining issues are whether federal regulations preempted the application of section 613.333 under the circumstances here or whether Plaintiff's condition "adversely affect[ed his] ability to perform his . . . job or the safety of other employees." Nev. Rev. Stat. § 613.333(1)(b).

The administrative order did not resolve this issue. It found that Defendant's decision to terminate Plaintiff was not for reasons of "gross misconduct," which would have disqualified Plaintiff from receiving temporary total disability under Nev. Rev. Stat. § 616C.232. (Decision & Order, ¶ 1, at 21; ¶ 4, at 19). The Nevada Supreme Court has not defined "gross misconduct" in this context, and the administrative order does not define the term. The order determined that although Plaintiff held a CDL he was not actually performing a "safety function" as defined by

the U.S. Department of Transportation ("DOT") because Plaintiff was scheduled to work in a customer service role answering telephones, rather than drive a commercial vehicle. (Decision & Order, ¶ 2, at 18; ¶ 5, at 19; ¶ 10, at 20). But Plaintiff was in fact performing a "safety-sensitive function" as defined by the DOT, because he was immediately available to drive a commercial motor vehicle, and the administrative order does not preclude that finding. Specifically, the DOT defines "safety-sensitive functions" to include "[a]ll time at an employer or shipper plant, terminal, facility, or other property, or on any public property, waiting to be dispatched, unless the driver has been relieved from duty by the employer." 49 C.F.R. § 382.107. Furthermore, "a driver is considered to be performing a safety-sensitive function during any period in which he or she is actually performing, ready to perform, *or immediately available to perform* any safety-sensitive functions." *Id.* (emphasis added). Plaintiff admits, and the record shows, that he was under no official driving restrictions while on light duty because his health care providers never indicated he should be restricted. (Decl. Pl., ¶¶ 17, 25, at 7; Aff. Julie Sandoval, ¶ 6, ECF No. 24-1, at 73; Aff. Tony Everett, ¶ 8, ECF No. 24-1, at 24; Reports, 27–39, ECF No. 24-1). The record does not show Defendant was on notice of Plaintiff's alleged inability to drive due to taking pain medications.

    The administrative order also determined that Plaintiff posed no risk to the safety of others under the meaning of the state statute. However, the order does not address other factors that might have made Plaintiff's BAC levels a risk to the safety of others, and it does not address whether Plaintiff's BAC levels affected his ability to perform his job.[1] Defendant points to

---

[1] As Defendant argues, a finding a gross misconduct is not the same as determining whether Plaintiff's BAC levels affected his ability to perform his job or the safety of others. Although the burden of proof for both issues is the preponderance of the evidence, *see* Nev. Rev. Stat. § 616C.232; *Addington v. Texas*, 441 U.S. 418, 423 (1979), a person could easily fail to engage in "gross misconduct" under the disability statute but still engage in conduct that adversely affects

testimony that other safety risks may exist at the distribution center where Plaintiff worked, apart from driving a vehicle. (Dep. Daniel Pessetto, 28:19-25–29:1-12, ECF No. 28-1, at 2–3).[2] The Court grants summary judgment as to this claim.

### B.   Per Se Defamation

Defendant moves the Court to grant summary judgment in its favor as to Plaintiff's defamation claim. For a claim of defamation, a plaintiff must prove four elements: "(1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (quotation omitted).

Plaintiff claims that "Defendant has told the U.S. Department of Transportation (DOT) that the Plaintiff was terminated for failing an alcohol test, which is untrue." (Compl. ¶ 31, ECF No. 1). This alleged statement *is* true, however. Plaintiff's claim directly contradicts a finding of the administrative proceeding that Plaintiff was terminated for failing a breathalyzer test. (*See* Decision & Order, ¶¶ 2–3, ECF No. 25, at 17) ("On October 2, 2013, [Plaintiff's] employment was terminated due to the results of the September 25, 2013 Breathalyzer tests."). Plaintiff argues that the test was improper and, thus, "the deliberate and unjustified report of a failed test to the DOT was maliciously false and defamatory." (Compl. ¶ 31). But even if the test was improper and the report unjustified, that does not make the report to DOT false. Furthermore,

---

his ability to perform his job or the safety of others. In other words, just because Plaintiff was not legally intoxicated and was not performing a "safety function" as defined by DOT, that does not mean his BAC levels might not have adversely affected his ability to perform his duties or the safety of others. Thus, although the administrative order precludes revisiting some factual issues in respect to this claim, it does not preclude addressing other issues involving whether Defendant violated Section 613.333.

[2] "There's a lot happening. There are lifts that are moving back and forth; the individuals, even if they are working in customer service, find a need to go out and to do their other assigned duties. And so we don't want them impaired in any way because of the liability we assume, and we care about our employees and we want them all to be safe."

Plaintiff has not presented any evidence to show what, if anything, Defendant actually communicated to the DOT or another third party. Instead, he asks the Court to infer that the communication occurred from the fact that he was required to undergo a counseling program on substance abuse to regain his ability to drive commercially. (*See* Decl. Pl., ¶ 32, at 11). However, the record casts doubt on Plaintiff's assertion because it shows that Plaintiff himself contacted the DOT "to find out what [his] options are, and they told [him] [he] had to go through [the counseling program]." (Dep. Pl., 103:3-7, at 3). Plaintiff has adduced no evidence to show the DOT actually received the results of the failed test from Defendant. Thus, based on the evidence available, the Court cannot make the inference Plaintiff requests. Plaintiff has failed to make a showing sufficient to establish that Defendant made a false statement, which is an element essential to his claim. The Court grants the motion as to this claim.

### C.   **Retaliatory Discharge in Violation of Public Policy**

Defendant moves the Court to grant summary judgment in its favor as to this claim. Plaintiff claims that Defendant terminated his employment "in retaliation for his being injured on the job and his filing of a valid Workers' Compensation claim." (Compl. ¶ 47). In Nevada, a narrow exception exists that allows an at-will employee who is fired in retaliation for filing a worker's compensation claim to bring a tort action for retaliatory discharge. *Hansen v. Harrah's*, 675 P.2d 394, 397 (Nev. 1984). Plaintiff has failed to make a showing sufficient to establish that Defendant terminated his employment for any reason other than his violation of company policy. In fact, his claim is based merely on a "possible theory." (Decl. Pl., ¶ 12, at 5). Plaintiff argues that Defendant has disciplined him in the past for being injured and filing workers' compensation

claims, but he offers no evidence to prove his allegation. (*See* Reports, 2–10, ECF No. 29-7).[3] Further, no evidence shows Defendant fired Plaintiff because of his most recent injury or workers' compensation claim. Indeed, the record and evidence show only that Defendant terminated his employment for failing the alcohol test, which was a violation of company policy. (*See* Decision & Order, ¶¶ 2–3, at 17; Doc., 10, ECF No. 29-7; Dep. Julie Sandoval, 64:22-25–65:1, ECF No. 24-1, at 60). The court grants the motion as to this claim.

### D.     ADA Claim

Defendant moves the Court to grant summary judgment in its favor as to this claim. Plaintiff claims that Defendant terminated him because of his disability.[4] Title I of the ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that he: "(1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of [his] disability." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). If "an employee establishes a prima facie case of discrimination because of a disability, and the employer provides a non-discriminatory reason for the discharge," then the *McDonnell Douglas* burden-shifting analysis applies. *Id.* at 1093.

It is clear that Plaintiff was disabled and was qualified for the position; however, he has failed to adduce any evidence showing that Defendant terminated his employment because of his

---

[3] The reports show Defendant put Plaintiff on probation once following an injury, but the other discipline was waived because Plaintiff self-reported the injuries. The reports also show Plaintiff filed "insurance claims," but nothing shows he was disciplined for filing workers' compensation claims.

[4] In his Complaint, Plaintiff also claims that Defendant denied him a reasonable accommodation for his disability, but he made no showing at all in relation to this aspect of the claim in his briefing.

disability. Indeed, the record and evidence show only that Defendant terminated Plaintiff's employment for failing the alcohol test, which was a violation of company policy. (*See* Decision & Order, ¶¶ 2–3, at 17; Doc., 10; Dep. Julie Sandoval, 64:22-25–65:1, at 60). Because Plaintiff has not satisfied the third element required to establish a prima facie case of discrimination, the Court concludes its analysis here. The Court grants Defendant's motion for summary judgment as to this claim.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 23) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment (ECF No. 25) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

Dated this 30th day of August, 2016.

_____
ROBERT C. JONES
United States District Judge